**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

**PAIGE CUPP,**

**Plaintiff,**

**v.** **Case No. 25-C-1113**

**FRANK BISIGNANO,**
**Commissioner of Social Security,**

**Defendant.**

---

**DECISION AND ORDER REVERSING THE COMMISSIONER'S DECISION**

---

This is an action for judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Paige Cupp's application for disability and disability insurance benefits under Title II of the Social Security Act. Plaintiff asserts that the decision of the administrative law judge (ALJ) is flawed for several reasons and requires remand. Although the court rejects most of the alleged flaws asserted by Plaintiff, the ALJ's failure to account for Plaintiff's limitations in maintaining the pace of work in her residual functional capacity (RFC) requires remand. The decision of the Commissioner will therefore be reversed and remanded.

## BACKGROUND

Plaintiff filed an application for a period of disability and disability insurance benefits on August 17, 2022, alleging disability beginning January 1, 2022. She listed "dermatomyositis, inflammatory disorder of muscle, ANA positive, inflammatory polyarthropathy, sleep disorder, inflammatory arthritis, tendonitis, chronic migraine without aura, overweight, and fast pulse" as the conditions limiting her ability to work. R. 212. After her application was denied initially and

on reconsideration, an ALJ held an administrative hearing on July 25, 2024. R. 33–47. Plaintiff, who was represented by counsel, and a vocational expert (VE) testified.

At the time of the hearing, Plaintiff was 33 years old and lived with her parents, her six-year-old son, and her aunt in a house in New London, Wisconsin. R. 37–38. Plaintiff completed high school. She stated that she had a driver's license and typically drives to run errands. R. 38.

Plaintiff testified that she is unable to work due to her progressive muscle weakness in her shoulders, arms, neck, hips, and hands; the pain throughout her body; her poor stamina; and fatigue. R. 39, 42. She also reported that she gets headaches daily and migraines weekly. R. 42. She reported taking Tramadol daily and ibuprofen for her muscle weakness and pain. R. 39. Plaintiff stated that the Tramadol helps her condition but makes her "sleepy," so she cannot do much when she takes it. R. 40. She testified that she gets infusions when she is at risk of having a flare up. Her last infusion occurred seven months before the hearing. *Id.* She reported that the side effects from the infusions were "pretty bad," even though the infusions were helpful. R. 41. Plaintiff testified that there was not a point where she felt like she would have been able to work on a full-time basis. R. 42.

As for a typical day, Plaintiff takes her medication after waking up, then tries to do small things around the house. She takes care of her son, can make simple meals, and helps with laundry or small cleaning tasks. R. 41. Plaintiff stated that her muscle weakness limits her ability to do most things on a daily basis. R. 39. She explained that she might be able to assist with laundry but that she needs to take a break. *Id.* Plaintiff enjoys spending time with her son watching television. R. 41. She testified that she tries to get outside daily and sits in a chair and watches her son play. R. 42.

In a 14-page decision dated August 20, 2024, the ALJ concluded that Plaintiff was not disabled. R. 15–28. Following the Agency's sequential evaluation process, the ALJ found that

Plaintiff met the insured status requirements of the Social Security Act through March 31, 2025, and that Plaintiff had not engaged in substantial gainful activity since January 1, 2022, the alleged onset date. R. 17. Next, the ALJ determined that Plaintiff had the following severe impairments: dermatomyositis, inflammatory arthritis, headaches, cardiac dysrhythmias, anxiety, and attention deficit hyperactivity disorder (ADHD). *Id.* The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 18.

After consideration of the record, the ALJ determined that Plaintiff had the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 404.1567(b) with the following limitations:

> the claimant can maintain attention, concentration, persistence, and pace for simple tasks with regularly scheduled breaks; she can have occasional interaction with the public, coworkers, and supervisors; can perform jobs having only occasional changes in the work setting; cannot climb ladders, ropes and scaffolds; and can only occasionally climb ramps and stairs.

R. 20. The ALJ noted that Plaintiff has no past relevant work. R. 25. But considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, including small products assembler, production assembler, packager, and labeler. R. 26. Accordingly, the ALJ concluded that Plaintiff was not under a disability, as defined in the Social Security Act, from January 1, 2022, through August 20, 2024, the date of the decision. R. 28. The Appeals Council denied Plaintiff's request for review of the ALJ's decision, making that decision the final decision of the Commissioner.

## LEGAL STANDARD

The Commissioner's final decision will be upheld "if the ALJ applied the correct legal standards and supported his decision with substantial evidence." *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011) (citing 42 U.S.C. § 405(g); *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010);

*Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009)). Substantial evidence is not conclusive evidence; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Crowell v. Kijakazi*, 72 F.4th 810, 813 (7th Cir. 2023) (internal quotation marks and citation omitted). Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn. *Jelinek*, 662 F.3d at 811 (citing *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009)). The ALJ "must build an accurate and logical bridge from the evidence to his conclusion[s]." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (citation omitted); *Groves v. Apfel*, 148 F.3d 809, 811 (7th Cir. 1998)).

The ALJ is also expected to follow the Social Security Administration's (SSA) rulings and regulations. Failure to do so, unless the error is harmless, requires reversal. *See Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). In reviewing the entire record, the court "does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility." *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Finally, judicial review is limited to the rationales offered by the ALJ. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Johnson v. Apfel*, 189 F.3d 561, 564 (7th Cir. 1999); *Sarchet v. Charter*, 78 F.3d 305, 307 (7th Cir. 1996)).

## ANALYSIS

### A. Subjective Symptoms

Plaintiff challenges the ALJ's evaluation of her subjective allegations. More specifically, Plaintiff first contends the ALJ did not properly evaluate her fatigue. Dkt. No. 16 at 46. The social security regulations set forth a two-step procedure for evaluating a claimant's statements about the symptoms allegedly caused by her impairments. *See* 20 C.F.R. § 404.1529. Symptoms are defined

as "[the claimant's] own description of [her] physical or mental impairment." 20 U.S.C. § 404.1502(i). First, the ALJ determines whether a medically determinable impairment "could reasonably be expected to produce the pain or other symptoms alleged." § 404.1529(a). If so, the ALJ then "evaluate[s] the intensity and persistence" of a claimant's symptoms and determines how they limit the claimant's "capacity for work." § 404.1529(c)(1). In doing so, the ALJ considers all the available evidence as well as the following factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of her pain or other symptoms; (3) the precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (5) other treatment; and (6) any other factors concerning functional limitations and restrictions due to pain or other symptoms. *See* § 404.1529(c)(3); *see also* SSR 16-3p.

"ALJ credibility determinations are given deference because ALJs are in a special position to hear, see, and assess witnesses." *Murphy v. Colvin*, 759 F.3d 811, 815 (7th Cir. 2014) (citation omitted). On judicial review, the court must "merely examine whether the ALJ's determination was reasoned and supported." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (citing *Jens v. Barnhart*, 347 F.3d 209, 213–14 (7th Cir. 2003)). The court is not to "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for that of the Commissioner." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). "It is only when the ALJ's determination lacks any explanation or support that we will declare it to be patently wrong . . . and deserving of reversal." *Elder*, 529 F.3d at 413–14 (internal quotation marks and citations omitted); *see also Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019).

In this case, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms are not consistent with the

medical evidence and other evidence in the record. R. 21. In reaching his conclusion, the ALJ discussed Plaintiff's symptoms, her testimony, the objective evidence and other medical evidence, Plaintiff's treatment history, and Plaintiff's activities of daily living. R. 18–25.

Plaintiff argues that the ALJ did not "construct a logical bridge from evidence of how Ms. Cupp's fatigue impacted her functionality to the conclusion that it was accompanied by limitations to certain movements." Dkt. No. 16 at 4. She claims that "the ALJ recognized that Ms. Cupp suffered from fatigue and that the symptom limited her" but then found due to her fatigue, "Ms. Cupp could not engage in climbing ladders, ropes, or scaffolds, and could only occasionally climb ramps and stairs." *Id.* (citing R. 24). But the ALJ added that limitation on climbing ropes and ladders not because he accepted Plaintiff's testimony in its entirety, but because he found the State agency medical consultant's opinion that Plaintiff could perform the full range of light exertional work overstated her functional capacity. The ALJ found the consultant's opinion only partially persuasive because he found that "the totality of her physical health impairments reasonabl[y] support [an] *inability* to perform the full range of light work." R. 24 (italics added).

For the most part, the ALJ accepted the medical consultants' opinions as to the functional limitation caused by Plaintiff's fatigue. Both medical consultants concluded that Plaintiff could perform the full range of light exertional work, which by definition includes the finding that she could work an entire eight-hour day and forty-hour week. R. 87, 95; *see Tenhove v. Colvin*, 927 F. Supp. 2d 557, 568 (E.D. Wis. 2013) ("Residual functional capacity ('RFC') is an assessment of the claimant's ability to perform sustained work-related physical and mental activities in a work setting on a regular and continuing basis, i.e., eight hours a day, for five days a week, or an equivalent work schedule. SSR 96–8p.").

Plaintiff cites her own reports that she "that she needed assistance dressing and bathing due to pain and fatigue"; that she "needed to take breaks when cooking"; that she "had to take breaks

and adapt how she cleaned"; that she "had difficulty with daily activities and needed multiple rest breaks during the day due to increased fatigue and pain"; that she "was less social due to fatigue"; that "[f]atigue also made concentrating difficult"; that she "only performed daily tasks on days when she had enough energy, as dermatomyositis caused significant fatigue"; and that "[f]atigue interfered with her ability to work even part-time." Dkt. No. 16 at 4–5. But the ALJ was not required to accept her testimony as fact. Claimants are not entitled to a finding of disabled just because they say they can't work. If the rule were otherwise, there would be no need for a hearing. Neither of the medical consultants who reviewed Plaintiff's medical reports and file concluded that fatigue would preclude her from working the full range of light work on a full-time basis. R. 87, 95–96. Their opinions constitute substantial evidence on which the ALJ was entitled to rely.

In applying SSR 96-8p and the regulations governing the assessment of a claimant's statement about her symptoms, the ALJ found "that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not consistent with the medical evidence and other evidence in the record." R. 21. In reaching this conclusion, the ALJ considered, in addition to the opinions of the medical consultants described above, Plaintiff's course of care and the clinical findings within the medical record. Plaintiff's description of her current symptoms included "weakness, fatigue, and pain throughout her body" and "intermittent pain and swelling in her hands and pain in her knees." R. 21. Her July 2022 rheumatology reports, however, showed "no evidence of soft tissue swelling or effusion in any joints" as well as "well-preserved range of motion and no stress pain." *Id.* "Strength testing was intact against resistance in her upper extremities, though there was some right proximal lower extremity give-way weakness." *Id.*

The ALJ noted that in late 2022 and throughout 2023 the claimant began receiving infusion treatment. Follow-up notations revealed Plaintiff was "doing well and that she has not noticed persistent weakness and improvement in her strength." R. 22. Plaintiff reported no major joint pain or recurrent rash, and physical examination notes described no swelling of the MCP joints (an improvement from prior examinations) and no significant synovitis in her wrists or elbows. *Id.* According to the report, Plaintiff had no pain on range-of-motion of her bilateral hips or knees and no joint effusion. Her lower extremity strength was measured at 5/5 in her hip flexors. Her distal muscle groups also had normal strength and her neck strength was 5/5 as well. *Id.* The ALJ was not unreasonable in concluding that these and the additional findings he cited did not support the intensity and persistence of the symptoms Plaintiff claimed.

Plaintiff argues that the ALJ did not explain how her activities of daily living were inconsistent with her reported symptoms and/or limitations. While an ALJ must consider the claimant's daily activities, among other factors, in evaluating the intensity and persistence of the claimant's symptoms, "this must be done with care." *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013). An ALJ cannot place "undue weight on a claimant's household activities in assessing the claimant's ability to hold a job outside the home." *Mendez v. Barnhart*, 439 F.3d 360, 362–63 (7th Cir. 2006). In this case, the ALJ indicated that Plaintiff is able to engage in activities such as driving, shopping, reading, going to doctor appointments, managing her money, watching television, and preparing meals. He also acknowledged that Plaintiff asserted a compromised ability to tend to her activities of daily living, such as taking care of her personal care needs, preparing more than simple/quick meals, doing housework and/or yardwork, shopping in person, and engaging in social activities, hobbies, or other interests. R. 19–21. While the ALJ could have more thoroughly explained how he considered the difficulty Plaintiff had in performing certain activities, he did not equate Plaintiff's ability to perform certain activities of daily living with an

ability to work full time. Instead, the ALJ considered Plaintiff's reported activities as one factor in assessing the credibility of her statements concerning the intensity, persistence, and limiting effects of her symptoms. *See Prill v. Kijakazi*, 23 F.4th 738, 748 (7th Cir. 2022) ("[I]t is entirely permissible to examine all of the evidence, including a claimant's daily activities, to assess whether testimony about the effects of his impairments was credible or exaggerated." (internal quotation marks and citation omitted)). The ALJ's assessment of Plaintiff's activities of daily living was not improper.

Plaintiff also asserts that the ALJ failed to account for her use of prescribed medications and their side effects. "Some of the factors that the ALJ considers at this stage are 'the type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms.'" *Arnold v. Saul*, 990 F.3d 1046, 1047 (7th Cir. 2021) (quoting § 404.1529(c)(3)(iv)). Plaintiff contends that the ALJ failed to explain why her receipt of IVIG Privigen infusions as well as the use of Tramadol, Prednisone, Azathioprine, and Hydroxychloroquine to treat her dermatomyositis suggested that her allegations of disabling symptoms were not consistent with the record. The ALJ indicated that when Plaintiff's symptoms increased, she would increase her medication. R. 21. He also observed that, when Plaintiff began receiving infusion treatment, she reported doing well and that she had not noticed persistent weakness or major joint pain. R. 22. The ALJ noted that examination findings revealed normal gait and station, normal balance, well preserved range of motion, and no evidence of significant synovitis, soft tissue swelling, or joint effusion. R. 21–23. The ALJ did not err in his assessment of Plaintiff's treatment.

As for medication side effects, Plaintiff stated that her medications caused headaches, nausea, pain, sleep issues, fatigue, weight gain, anxiety, tiredness, and gastrointestinal issues. *See* Dkt. No. 16 at 13 (citing R. 246, 256). But Plaintiff does not explain how her side effects impacted

her ability to work. *See Arnold*, 990 F.3d at 1047 ("Nothing in the record suggests that Arnold suffered side effects that actually impacted her ability to work."). In sum, remand is not warranted on this basis.

**B. Mental RFC Assessment**

Plaintiff argues that the ALJ erred in assessing her mental RFC. A claimant's RFC is "the most [the claimant] can still do despite [the claimant's] limitations." 20 C.F.R. § 404.1545(a)(1). At the hearing level, the RFC assessment "is a matter for the ALJ alone" to decide. *Thomas v. Colvin*, 745 F.3d 802, 808 (7th Cir. 2014); 20 C.F.R. § 404.1546(c). "As a general rule, both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014) (citation omitted). "Essentially, an ALJ's RFC analysis 'must say enough to enable review of whether the ALJ considered the totality of a claimant's limitations.'" *Jarnutowski v. Kijakazi*, 48 F.4th 769, 774 (7th Cir. 2022) (quoting *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021)).

The ALJ found that Plaintiff had the RFC to perform "light work . . . except that she can maintain attention, concentration, persistence, and pace for simple tasks with regularly scheduled breaks; she can have occasional interaction with the public, coworkers, and supervisors; she can perform jobs having only occasional changes in the work setting; she cannot climb ladders, ropes, and scaffolds; and she can only occasionally climb ramps and stairs." R. 20. Plaintiff challenges the ALJ's RFC finding in several respects.

Plaintiff first notes that "the State agency psychological consultant had included as a limitation in her mental RFC that "Ms. Cupp could perform work that required occasional superficial interaction with others." Dkt. No. 16 at 6 (citing R. 88). The ALJ did not find significant support for the "superficial" limitation and instead concluded that Plaintiff could engage in "occasional interaction with the public, coworkers, and supervisors." R. 20. The ALJ

noted that Plaintiff had "described issues with anxiety and irritability," but there was "no 'clinical support' to further limit interactions to superficial." R. 24. Plaintiff argues that this was error because "'occasional' and 'superficial' are materially different limitations, for occasional is a durational limit while superficial is a qualitative limitation." Dkt. No. 16 at 7.

"It is well-established that both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." *Burmester*, 920 F.3d at 511 (cleaned up). But an RFC assessment "is a matter for the ALJ alone—not a treating or examining doctor—to decide." *Thomas*, 745 F.3d at 808. It is up to the ALJ to put the limitations he or she finds into words that the vocational expert is likely to understand. The Seventh Circuit has recognized that "the law does not require ALJs to use certain words, or refrain from using others, to describe the pace at which a claimant is able to work." *Martin v. Saul*, 950 F.3d 369, 374 (7th Cir. 2020). What the ALJ must do, however, is "account for the 'totality of a claimant's limitations' in determining the proper RFC." *Id.* (quoting *Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018)). "As a matter of form, the ALJ need not put the questions to the VE in specific terms—there is no magic words requirement. But as a matter of substance, the ALJ must ensure that the VE is 'apprised fully of the claimant's limitations' so that the VE can exclude those jobs that the claimant would be unable to perform." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) (quoting *Moreno*, 882 F.3d at 730; *DeCamp v. Berryhill*, 916 F.3d 671, 675–76 (7th Cir. 2019)).

It is not clear what "superficial" interaction entails. It would seem that a job involving "simple tasks" and only occasional interaction with others would necessarily involve only superficial interactions. In any event, viewing the record as a whole, the ALJ noted Plaintiff's ability to "engage in activities that require her to go out into public and interact with others at times, such as shopping, attending medical appointments, and at times working since the alleged

onset date." R. 19. The ALJ also observed that the treatment records indicate that the claimant was observed on examinations to be pleasant and cooperative, and to appear comfortable at appointments. *Id.* Given these findings and the uncertainty of the limitation in the context of the RFC, it was not error for the ALJ to reject the "superficial" limitation. The limitation itself seems, under these circumstances, superficial.

The more serious problem, and the one requiring remand, is the ALJ's failure to translate Plaintiff's moderate limitation in pace into the RFC. Dr. Barthell completed a Mental RFC Assessment at the initial level and concluded that Plaintiff had moderate limitations in the four functional domains of mental functioning. With respect to Plaintiff's understanding and memory, Dr. Barthell found that Plaintiff was moderately limited in the ability to understand and remember detailed instructions. R. 88. In the narrative portion of the form, Dr. Barthell stated, "Claimant can understand and remember simple instructions." *Id.* As to Plaintiff's sustained concentration and persistence limitations, Dr. Barthell opined that Plaintiff was moderately limited in the ability to carry out detailed instructions, to maintain attention and concentration for extended periods, to work in coordination with or in proximity to others without being distracted by them, and to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. *Id.* Dr. Barthell further explained, "Claimant can perform simple tasks that do not require close collaboration with others, *at a moderate pace*." *Id.* (italics added).

In formulating the RFC, the ALJ included the limitation of no "close collaboration with others" by stating she could have only "occasional interaction with the public, coworkers, and supervisors." R. 20. But the RFC contains no limitation corresponding to Plaintiff's moderate limitation for pace. This was error under this circuit's current caselaw.

In *Yurt*, the court rejected the argument that an RFC that limits a claimant to "simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace." 758 F.3d at 858–59. In so ruling the court noted "we have repeatedly rejected the notion that a hypothetical like the one here confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace." *Id.* (citing *Stewart v. Astrue*, 561 F.3d 679, 685 (7th Cir. 2009)).

In *Varga v. Colvin*, 794 F.3d 809 (7th Cir. 2015), the court went even further. *Varga* dealt with the hypothetical question addressed to the vocational expert. The court noted that "[i]n this circuit, both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." *Id.* at 813 (internal quotation marks and citation omitted). Varga claimed that the ALJ had erred in failing to include her moderate limitations in maintaining concentration, persistence, and pace in his hypothetical "confining the claimant to simple, routine tasks and limited interactions with others." *Id.* at 814. The ALJ had gone on to clarify "that the individual would only be required to perform work 'free of fast-paced production requirements, involving only simple work related-decisions with few if any workplace changes and no more than occasional interaction with coworkers or supervisors.'" *Id.* at 815. Despite this clarification, the court concluded that the hypothetical failed to account for all of Varga's limitations and reversed the district court's judgment affirming the Commissioner's decision. *Id.* at 815–17.

*Martin* seems to have narrowed *Varga* by restricting *Varga*'s holding to its treatment of the concentration element of the "concentration, persistence or pace" trilogy of mental function aspects highlighted in the agency's forms used for assessing claimants' mental RFCs. 950 F.3d at 373–74. With respect to a limitation of pace, Martin stated that "[t]he law does not require ALJs

to use certain words, or to refrain from using others, to describe the pace at which a claimant is able to work." *Id.* at 374. But what *Martin* made clear is that the ALJ may not ignore a concentration, persistence, or pace limitation and fail to account for a limitation in either his hypothetical or the claimant's RFC. In the case before it, "the ALJ incorporated pace-related limitations by stating that Martin needed flexibility and work requirements that were goal-oriented." *Id.* "Ideally," the court explained, "the ALJ would have brought to the surface what is surely implicit in the determination—that any pace-based goals must be reasonable as a way of signaling that the employer could not set the bar beyond the person's functional reach." *Id.* Though the ALJ failed to do so, the court took comfort "from the fact that the jobs the vocational expert suggested inherently reflected such a reasonableness limitation." *Id.*

In this case, as noted above, the ALJ incorporated no pace-related limitations in the RFC. He eliminated the "at a moderate pace" limitation Dr. Barthell had included in the narrative section of the mental RFC form without explanation. And unlike *Martin*, here the court cannot take comfort in "the fact that the jobs the vocational expert suggested inherently reflected such a reasonableness limitation." *Id.* In this case, the vocational expert listed the following as jobs Plaintiff could perform given her RFC:

> • Small Products Assembler, DOT code 706.684-022, is a light, unskilled, specific vocational preparation (SVP) of 2 occupation and there are approximately 16,000 jobs in the national economy.
>
> • Production Assembler, DOT code 706.687-010, is a light, unskilled, specific vocational preparation (SVP) of 2 occupation and there are approximately 15,000 jobs in the national economy.
>
> • Packager, DOT code 559.687-074, is a light, unskilled, specific vocational preparation (SVP) of 2 occupation and there are approximately 6,000 jobs in the national economy.
>
> • Labeler, DOT code 920.687-126, is a light, unskilled, specific vocational preparation (SVP) of 2 occupation and there are approximately 3,000 jobs in the national economy.

R. 26. None of these jobs suggest an inherent limitation as to the pace at which they would need to be performed. Remand is therefore necessary.

## CONCLUSION

For the reason set forth above, the decision of the Commissioner is **REVERSED** and **REMANDED** to the Agency pursuant to 42 U.S.C. § 405(g) (sentence four). The Clerk is directed to enter judgment in favor of Plaintiff.

**SO ORDERED** at Green Bay, Wisconsin this 26th day of August, 2026.

William C. Griesbach
United States District Judge